**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 13 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOSE D. SANCHEZ,

        Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner
of Social Security,

        Defendant-Appellee.

No.  99-2236
(D.C. No. CIV-98-813-M/DJS)
(D. N.M.)

**ORDER AND JUDGMENT**   *

Before **KELLY** , **HENRY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Jose D. Sanchez appeals the district court's order affirming the Commissioner's decision denying him social security benefits under Title II of the Social Security Act at step five of the sequential evaluation process. See 20 C.F.R. § 404.1520 (describing five-step evaluation process in detail); Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (same). We have jurisdiction pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we reverse and remand for proceedings consistent with this order and judgment.

We review the Commissioner's decision for substantial evidence in the record and to ascertain whether the Commissioner applied the correct legal standards. See Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997). "[W]e neither reweigh the evidence nor substitute our judgment for that of the agency." Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Soliz v. Chater, 82 F.3d 373, 375 (10th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (further quotation omitted)).

Plaintiff was born in 1944, and, on the day of the administrative law judge's (ALJ) decision, was fifty-two years old. Plaintiff, formerly a miner/laborer, injured his back while lifting heavy crib blocks (timbers) in March 1995. In October 1992, he applied for social security benefits under Title II of

the Social Security Act based on chronic lower back pain. He subsequently added depression to his application.

The Commissioner denied plaintiff's application at the administrative level and again on reconsideration. After a de novo hearing, the ALJ issued a decision finding that plaintiff had a severe impairment associated with chronic myofascial pain and degenerative disc disease and, while plaintiff could no longer perform his past relevant work as a miner/laborer, he retained the residual functional capacity (RFC) to perform the full range of light work. As to his depression, the ALJ found that there was "not sufficient evidence to find that [plaintiff] has a medically determinable psychological impairment which meets the durational requirement." Appellant's App., Vol. II at 14. Based primarily on the medical evidence, the ALJ did not credit plaintiff's testimony of disabling pain and applied the Medical Vocation Guidelines which compelled a nondisability finding. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, § 202.11. The Appeals Council affirmed the ALJ's decision and it became the Commissioner's final decision. Thereafter, plaintiff filed a complaint in district court. The district court, adopting in whole the magistrate judge's "Analysis and Recommended Disposition," affirmed and this appeal followed.

On appeal, plaintiff challenges the ALJ's finding that plaintiff does not suffer a severe mental impairment, the ALJ's finding that plaintiff is capable of

performing the full range of light work, and the ALJ's credibility determination. In addition, plaintiff contends that the ALJ failed to accord due weight to a Workers' Compensation Administration determination finding plaintiff disabled, and asserts that the ALJ failed to adequately develop the record.

Mental Impairment

Plaintiff argues that the ALJ should have ordered a consultative examination, see 20 C.F.R. § 404.1519a(b), and should have filled out a psychiatric review technique form (PRT), see 20 C.F.R § 404.1520a. Plaintiff did not raise depression initially when applying for social security benefits. However, in the "Reconsidered Disability Report," he described himself as depressed and often in a bad mood. See Appellant's App., Vol. II at 79. In denying benefits on reconsideration, the Commissioner stated that although plaintiff feels depressed, he is "able to handle those tasks which do not irritate [his] back." Id. at 30. The Commissioner did not prepare a PRT on his reconsidered determination. See 20 C.F.R, § 404.1520a (outlining procedure to be followed when evaluating mental impairment at initial, reconsidered, and ALJ hearing). In his request for a hearing before an ALJ, plaintiff described his psychological state as having "deteriorated significantly." Appellant's App., Vol. II at 33. The issue of whether plaintiff suffered from a severe mental impairment was certified for hearing. See id. at 36, 37.

In assessing plaintiff's claimed depression, the ALJ considered a letter prepared by plaintiff's treating psychiatrist, Dr. Jafet Gonzalez, of Taos/Colfax Community Services (Raton Mental Health Center), [1] and stated as follows:

> Apparently, during this time he was also treated for major depression by Jafe[t] Gonzales, M.D. It was Mr. Gonzales' opinion that Mr. Sanchez' depression was a result of his chronic pain, and not related to a mental condition or alcohol use . . . . The claimant did not seek, nor was he treated for depression, until he was seen for alcohol treatment. He has been treated with counseling and medication. However, there is not sufficient evidence to find that he has a medically determinable psychological impairment which meets the durational requirements.

Id. at 14. Plaintiff saw Dr. Gonzales monthly for psychiatric services and Dr. Gonzales prescribed medications to help him sleep and to treat his depression. The only evidence in the record from Dr. Gonzales is the terse letter relied upon by the ALJ. See id. at 138.

---

[1]    Dr. Gonzales's letter, dated September 19, 1996, states in pertinent part as follows:

> Mr. Sanchez is a patient of the Raton Mental Health Center. He has been treated by me for Major Depression, which seems to have developed after his back injury. He has also been diagnosed with alcohol abuse. Frequently, major depression is a consequence of chronic pain.
>
> I believe that Mr. Sanchez's depression can improve with psychiatric treatment. I also feel that his alcohol abuse will decrease. It seems, at this point, that his disability is related to his back injury and not to a mental illness.

Appellant's App., Vol. II at 138.

-5-

The remaining evidence on plaintiff's depression is limited. Plaintiff submitted documentation dated July 3, 1996 from Teresa Smith, a therapist whom he was seeing twice a month at the Taos/Colfax Community Services, and a letter, dated November 25, 1996, from Diane Santistevan, a counselor at the Taos/Colfax Community Services. Ms. Smith described plaintiff as suffering from "[m]ajor depression, recurrent, severe, without psychotic features due to injury and chronic pain." Id. at 135. Ms. Santistevan's letter stated that, although plaintiff had drastically reduced his consumption of alcohol, he had not experienced corresponding improvement in social interaction, daily living activities, and emotional stability. See id. at 96. Ms. Santistevan further noted that plaintiff continued to be treated by Dr. Gonzales for "acute depression." Id. While not "acceptable sources" under 20 C.F.R. § 404.1513(a), "[i]nformation from other sources may also help [the Commissioner] to understand how [plaintiff's] impairment affects [his] ability to work." 20 C.F.R. § 404.1513(e).

Plaintiff testified that he was not depressed before his injury, see Appellant's App., Vol. II at 152, and stated that his depression was getting a little better, see id. at 154. In addition, he testified that he cut back on his drinking because of his depression medication. See id. He also described that he has had suicidal thoughts in the past, has feelings of guilt and worthlessness, has trouble concentrating and is forgetful, and, since the accident, has been mad at and

-6-

verbally abusive to his wife. See id. at 166-68. Plaintiff's wife testified that he has been "bad" since the accident, gets mad and yells at her for no reason, and often sends her away. Id. at 170.

It is the plaintiff's burden to prove he is disabled. See Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir. 1991). Despite this burden, the ALJ shoulders responsibility in the nonadversarial social security setting "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993). This responsibility to develop the record may require the ALJ to order a consultative examination. See Hawkins, 113 F.3d at 1166. Dr. Gonzales's diagnosis of major depression triggered the ALJ's duty to further develop the record concerning that impairment. See Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). Therefore, we agree with plaintiff's contentions; based on our review of the record, we find the ALJ should have further developed the record on plaintiff's mental impairment by ordering a consultative examination. See 20 C.F.R. § 404.1519a(b); [2] Hawkins, 113 F.3d

---

[2] 20 C.F.R. § 404.1519a(b) provides, in relevant part, as follows:

*Situations requiring a consultative examination.* A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim.

at 1166 (acknowledging Commissioner's "broad latitude in ordering consultative examinations" and stating "where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary" (footnote omitted)).  Specifically, Dr. Gonzales's letter and other evidence in the record  "suggest[ ] the existence of a condition which could have a material impact on the disability decision requiring further investigation." Hawkins , 113 F.3d at 1167.  We note also that the ALJ's duty to develop the record may have been heightened because there was no PRT in the record. Cf. id. at 1165.

We conclude that the ALJ's determination that plaintiff's mental impairment does not meet the durational requirement is not supported by substantial record evidence and that the ALJ failed to fulfill his duty to adequately develop the record on that issue.  In addition to ordering a consultative examination, the ALJ should fill out a PRT on remand.     See Hill, 924 F.2d at 975 ("Since the record contained evidence of a mental impairment that allegedly prevented [the plaintiff] from working, the [Commissioner] was required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the proceedings accordingly.").

Credibility Determination

We next consider an issue closely related to the ALJ's failure to order a consultative examination, specifically the ALJ's pain credibility determination. Plaintiff claims the ALJ failed to consider that plaintiff's condition--myofascial pain disorder--is soft tissue disease that defies objective medical verification. In addition, plaintiff takes issue with the ALJ's failure to consider his consistent use of pain medication, his back spasms, and his repeated efforts to relieve his pain through chiropractic care and epidural and facet block injections. Instead, plaintiff contends the ALJ iterated his activities of daily living without noting how limited those activities are by plaintiff's pain and depression. Plaintiff also takes issue with the ALJ's statement that he failed to follow his physician's recommendation that he seek chronic pain management. He claims that following the recommended course would not have restored his ability to work.

To qualify as disabling, pain must be severe enough--either by itself or in combination with other impairments--to preclude any substantially gainful employment. See Brown v. Bowen, 801 F.2d 361, 362-63 (10th Cir. 1986). This court has enumerated for consideration the following factors when analyzing a claimant's pain evidence:

> (1) [W]hether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

<u>Musgrave v. Sullivan</u>, 966 F.2d 1371, 1376 (10th Cir. 1992) (citing <u>Luna v. Bowen</u>, 834 F.2d 161, 163-64 (10th Cir. 1987)). Objective evidence includes physiological and psychological evidence that can be verified by external testing. <u>See</u> <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1488-89 (10th Cir. 1993). Subjective evidence comprises statements from the claimant and other witnesses that are evaluated on their credibility. <u>See</u> <u>id.</u> at 1489.

While plaintiff has shown objective medical evidence of a "pain producing impairment," and a loose nexus between the impairment and his pain, the objective evidence does not establish <u>disabling</u> pain. Accordingly, the ALJ had to evaluate plaintiff's subjective pain testimony and the other pertinent evidence before him. When we review an ALJ's assessment of a claimant's disabling pain, we do so always with the caveat that "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." <u>Diaz v. Secretary of Health & Human Servs.</u>, 898 F.2d 774, 777 (10th Cir. 1990).

At the hearing, plaintiff testified that the pain moves from one side of his back to the other and moves down into both legs. <u>See</u> Appellant's App., Vol. II at 158. He described the pain as so severe that he often doubles his pain medication dose and, even with sleeping pills, he can sleep no more than three hours a night. <u>See</u> <u>id.</u> at 159-60. Plaintiff also testified that he applies ice packs

frequently. See id. at 160. At the time of the hearing, he weighed twenty pounds less than his usual weight because of loss of appetite. See id. at 146-47.

The ALJ found that plaintiff's "testimony of subjective complaints and functional limitations was not entirely supported by the evidence as a whole to the disabling degree he alleged." See id. at 15. In reaching this conclusion, the ALJ considered plaintiff's medical history, [3] activities, his failure to seek treatment (other than calling in prescriptions), the Functional Capacity Evaluation which demonstrated plaintiff was in the light duty category, and the fact that medical evidence reflected his ability to return to light duty status as early as August, 1995. The ALJ then found that plaintiff's pain did not cause him any additional limitations, noting that there was "no evidence that his pain adversely affected his abilities to maintain attention or concentration, or to understand, remember, or carry out job instructions." Id. at 15-16.

---

[3] Plaintiff was treated for back pain by two physicians, Dr. John J. Smoker and Dr. Anthony P. Reeve. Initially, plaintiff was seen by Dr. Smoker, his family physician. Thereafter, he was treated by Dr. Reeve, who released him to light duty. Although plaintiff went back to work for a short period (five days in July 1995) he was not able to continue working due to his pain. Dr. Reeve's reports indicate that plaintiff's MRI and CT scans, as well as his EMG/nerve conduction study and X-rays have all been normal. See Appellant's App., Vol. II at 112, 113. Dr. Reeve's reports also note that, on examination, plaintiff demonstrates spasm in the lumbosacral spine, has pain on rotation, and walks with a stooped posture. See id. at 112. Due to the spasms and pain, plaintiff was accorded a five percent impairment for purposes of workers' compensation. See id. Dr. Reeve further noted that plaintiff requires chronic pain management, and that while he had been under chiropractic care, it did not seem of any benefit. See id. at 113.

Notably, the ALJ did not discuss plaintiff's use of pain and sleep medications. [4] Instead, the ALJ emphasized claimant's failure to pursue medical treatment for his back for almost a full year before the hearing. See id. at 15. Hence, the ALJ did not evaluate the significance of those medications in his overall credibility determination. Nor did he address some of plaintiff's other attempts to treat his pain, for example chiropractic care and ice packs. He did note, however, that plaintiff had an epidural in June 1995 which significantly resolved his pain. See id. Nor did the ALJ discuss plaintiff's alleged self-medicating behavior as it related to his pain other than to note that plaintiff had stopped drinking alcohol two months prior to the hearing. See id. at 14. In fact, plaintiff testified that he was drinking to relieve his pain. See id. at 154.

While the ALJ recited plaintiff's daily living activities, he did not discuss their limited nature:

> [Claimant] has a driver's license, and drives mainly around town. He does no yard work or shopping. He does not socialize. He walks two blocks, and can stand for about 25 minutes. He is able to sit for the same length of time. He is able to lift five pounds, and bend "a little." He is unable to squat or climb stairs. He does not utilize

---

[4] In his "Daily Activities Questionnaire," plaintiff reported that he was taking hydrocodone as needed for pain and ambien, a sleep medication, before going to bed. See Appellant's App., Vol. II at 88 (dated March 15, 1996). Subsequently, plaintiff started taking antidepressant medications. See id. at 94. He has also been prescribed various other medications during the course of his treatment. See, e.g. , id. at 69 (Physical Daily Activities Questionnaire listing seven medications).

assistive devices for walking. He is able to care for his personal needs. He does not like to be around people, and prefers to be alone.

Id. at 15.

On this record, we conclude that the ALJ failed to fulfill his duty to provide adequate findings to support his credibility determination. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ considered some of the factors that we have approved for purposes of evaluating pain testimony. See Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991) (setting out factors considered in evaluating credibility of pain testimony). He did not, however, address some of the other pertinent evidence. See Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects."). Nor did the ALJ address any impact that plaintiff's depression may have on his back pain. See Luna, 834 F.2d at 166 (acknowledging the "possibility that psychological disorders combine with physical problems"). Accordingly, we remand "for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence." Clifton, 79 F.3d at 1010. We express no view on the outcome on remand; "[o]ur remand 'simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.'" Kepler, 68 F.3d at 392 (quoting Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988)).

RFC

Plaintiff challenges the ALJ's finding at step five that he could perform the full range of light work, thereby disqualifying him from benefits pursuant to the Medical Vocational Guidelines. Because we remand for more complete findings on plaintiff's allegations of pain and for a consultative examination on plaintiff's mental impairment, we also remand for a corresponding reevaluation of the RFC. See Hargis, 945 F.2d at 1491 ("A claimant's [nonexertional] impairment must also be evaluated in combination with the effects of other impairments." (footnote omitted)).

Workers' Compensation

Plaintiff contends that the ALJ failed to consider his workers' compensation benefits as required under Baca v. Department of Health & Human Services, 5 F.3d 476 (10th Cir. 1993). In Baca, we stated that, although disability findings by other agencies are not binding on the Commissioner, the ALJ should nevertheless consider such agency determinations. See id. at 480. Plaintiff has been rated as five percent impaired. See Appellant's App., Vol. II at 37. During the hearing, the ALJ briefly questioned plaintiff concerning the receipt of these benefits but only apropos to plaintiff's financial situation. See id. at 146. Based on our disposition, we need not determine whether the ALJ committed reversible

error in not explicitly addressing the workers' compensation determination in his decision. Rather, on remand, the ALJ should address that determination as appropriate.

In addition, on remand, the ALJ should make reasonable efforts to obtain Dr. Gonzales's treating notes as well as the records of plaintiff's two treating chiropractors, Dr. Washburn and Dr. Berg. <u>See</u> <u>Hill</u>, 924 F.2d at 975.

The REVERSE the district court's judgment and REMAND the case to that court with instructions to remand the case to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

Michael R. Murphy
Circuit Judge